Lawrence, J.
It was held by Mr. Justice Van Vorst, when this case was before him on a demurrer to the complaint, “that it seems plain that the allegations in the plaintiff’s complaint entitle them to the relief demanded.” The learned justice also held, “ that the plaintiffs had a present right to participate in all the advantages of the arrangement, unless they are precluded by some lawful limitation.” And after citing the provisions of the act of May 11, 1874, he reaches the conclusion that while, under the act, a time might lawfully have been limited, within which the stockholders or the corporation must apply to be allowed to come in and avail themselves of the benefits of the organization of the new company, which limitation under the act, could not have been for a period of less than six months after the organization of the new company, no such limitation had in fact been made. In these views I fully concur, and although the decision of Justice Van Vorst and that of Judge Gilbert, to which he approvingly refers, were made upon demurrer, I do not perceive that the facts proven on the trial before me, alter the legal status of the parties to this action.
It is most conclusively shown by the evidence that the plaintiffs had no actual notice of the fact that the last day on which the necessary payments on the assessments on the preferred and common stock of the Erie Railway Company could be made, would be October 31, 1878. Neither does it appear that any of the notices which were published by the trustees of the Erie Railway Reconstruction were brought to the knowledge of the plaintiffs until after the time sor making such payments had expired. Mr. Emile Vatabel, who was *135 the first one of the plaintiffs’ firm, who learned anything on the subject, noticed on a stock indicator quotations of shares of Erie Assessments “paid” or “not paid,” about two o’clock in the afternoon of October 31,1878, and upon inquiry was unable that day to learn when the time for making the payments for such assessments would expire, and did not learn of the date fixed for the payment of the final assessment until the following day, and on that day a proper tender of the moneys which were due under the assessments upon the plaintiffs’ stock was made. This was, I think, sufficient to save the plaintiffs’ rights under the statute, because I do not regard a notice in the newspapers, not brought home to the plaintiffs’ knowledge, as working a forfeiture of those rights, it not appearing that the stock in the new company, to which the plaintiffs would otherwise have been entitled, had been sold or disposed of. The 'notices in the newspapers were objected to by the plaintiffs on the trial as incompetent and irrelevant evidence. I shall exclude those which were published in the English newspapers, and admit those which were published in the State of New York, giving to each party an exception to my ruling in this respect.
For these reasons I am of the opinion that the plaintiffs are entitled to judgment as prayed for in the complaint. The findings* may be settled on two days’ notice.

 The following were the conclusions of law as settled.
1. That the judgment in the suit of the Farmers’ Loan and Trust Company against the Erie Railway Company and others, referred to in the pleadings in this action, was not an ordinary and usual judgment of foreclosure and sale, but was an extraordinary and special judgment under and pursuant to the provisions of chapter 430 of the Laws of 1874, entitled “An Act to facilitate the reorganization of railroads sold under mortgage, and providing for the formation of new companies in such cases,” and the amendments to such act.
2. That the “plan and agreement” referred to in the pleadings, *136 made and entered into for and in anticipation of the readjustment of the respective interests and franchises, in the property of the Brie Railway Company, of the mortgage creditors and stockholders of said company, and for the representation of such interests of creditors and stockholders in the bonds and stock of the defendant in this action, and -under and in conformity with which, the said property and franchises were sold and purchased at the sale under said judgment, supplemented the said chapter 430 of the Laws of 1874, and the amendements thereto, and became and was and is a part of the fundamental law applicable to the issues in this action.
3. That under the provisions of said statutes, the plaintiffs had the right to assent to said “ plan and agreement,” at any time within six months after the organization of the defendant on the 20th day of April, 1878, and, by complying with the terms and conditions of the same, to become entitled to their pro rata benefits therein, according to its terms.
4. That under the provisions of the “plan and agreement,” which supplemented the said statute, and became a part of the fundamental law applicable to the premises as aforesaid, the plaintiffs had the right to assent to the said “ plan and agreement,” and, by complying with its terms and conditions, to become entitled to their pro rata benefits therein at any time before the expiration of such time as might be lawfully limited by the parties thereto.
5. That the time within which the plaintiffs might assent to the said “plan and agreement,” and, by complying with its terms and conditions, become entitled to their pro rata benefits therein, could be limited only by giving them notice of such limitation.
6. That such notice, to be sufficient, must be a notice which would legally charge the plaintiffs with knowledge.
7. That the notices which were published in newspapers, and by which the defendant claims that the plaintiffs’ time in which to assent to and comply with the terms and conditions of the said “ plan and agreement ” was limited, were not notices to the plaintiffs.
8. That no notice of limitation of time, within which to assent to and comply with the terms and conditions of the “ plan and agreement,” was given to or received by the plaintiffs, before the expiration of the time assumed to be limited and now claimed to have been limited by the parties to the said “ plan and agreement.”
9. That the plaintiffs’ time within which they might assent to and comply with the terms and conditions of the “plan and agreement,” was not lawfully limited prior to the commencement of this action.
10. That the parties of the first part to the said “plan and agreement ”—otherwise called the London Reconstruction Trustees—as *137 such had and have no other or greater rights and interest in the franchises and property of the Brie Railroad Company, either before or after the sale thereof under the judgment aforesaid and the conveyance thereof to the defendant, than any and every of the other bond and stockholders of the said the Erie Railway Company, who had assented or should assent to the “ plan and agreement,” and had complied or should comply with its terms and conditions before the expiration of such time for such assent and compliance as might be lawfully limited.
11. That Messrs. Morgan, Welsh and Wells, trustees under the said 11 plan and agreement,” purchased and took title to the property and franchises of the Erie Railway Company, subject to all the lawful provisions of the said “plan and agreement,” and subject to the existing rights and equities of the bond and stockholders of thafe company. v
12. That the franchises and property of the Erie Railway Company were conveyed to and vested in the defendant, subject to all the lawful provisions of the “ plan and agreement,” and subject to the existing rights and equities of the bond and stockholders of the Erie Railway Company.
13. That at the time of the purchase and conveyance of the property and franchises of the Erie Railway Company, by and to Messrs. Morgan, Welsh and Wells, trustees as aforesaid, and at the time the" same were conveyed to and vested in the defendant, the plaintiffs had rights and equitable interests therein, as the owners and holders of three hundred shares of the common stock of the said the Erie Railway Company, and were beneficiaries under the trust committed to the said Morgan, Welsh and Wells.
14. That the plaintiffs still have rights and equities in and in respect of the franchises and property heretofore of the Brie Railway Company, which were conveyed to the defendant as aforesaid.
15. That at the time of the sale and conveyance of the said franchises and property aforesaid, the plaintiffs had, and ever since have liad and still have, the right to assent to the said “plan aud agreement,” and, by complying with the terms and"conditions thereof, became entitled to their pro rata benefits therein.
16. That the tender, by the plaintiffs, of the certificates of their three hundred shares óf the common stock of the Erie Railway Company and the sum of four dollars gold per share with interest thereon from the 1st day of March, 1877, to the time of such tender, made on the 1st day of November, 1878, to the Farmers’ Loan and Trust Company, was a good aud sufficient tender, and a full and sufficient exercise of their right to assent to the said “plan and agreement,” and *138 compliance with its terms and conditions, to entitle them to their pro rata benefits therein.
17. That the tender, by the plaintiffs, of the certificates of their three hundred shares of the common stock of the Erie Bailway Company, and the sum of four dollars gold per share with interest thereon from the 1st day of March, 1877, to the time of suh tender, made on the 31st day of December, 1879, to the defendant, was a good and sufficient tender, and a full and sufficient exercise of their right to assent to the said “plan and agreement,” and compliance with its terms and conditions, to entitle them to their pro rata benefits therein.
18. That in respect to any omission or delay on the part of the said plaintiffs, in paying or tendering the amount of the assessment on the shares of stock owned and held by them as aforesaid, within the time claimed to have been limited by the parties to the said “plan and agreement,” the said plaintiffs were, at the time of the commencement of this action, and are now entitled in equity, to be relieved from any forfeiture of the said shares of stock and their right to exchange the same for the stock of the defendant, upon making compensation, and that the payment of the said assessment, with interest from March 1st, 1877, is compensation in the premises.
19. That so long as the stock which is claimed by the plaintiffs remains, unissued and undisposed of, in the hands of the defendant, the plaintiffs are equitably entitled to have certificates for the same issued and delivered to them upon the surrender of their certificates of stock of the Erie Bailway Company and payment of the amount of four dollars gold per share, with interest thereon from the 1st day of March, 1877.
30. That the plaintiffs are entitled to judgment against the defendant in this action :
1. That the defendant issue and deliver unto the plaintiffs a certificate for three hundred shares of its capital stock, of the denomination known as common stock, of the par value of one hundred dollars per share, upon demand and upon the payment to it of the sum of twelve hundred dollars, in gold coin, with interest thereon, calculated at the rate of seven per cent, per annum, from the 1st day of March, 18i7, to and until the 1st day of November,-1878, and the surrender to it, by the plaintiffs, of the certificates for three hundred shares of the common stock of the Erie Bailway Company, held and owned by them.
3. That the defendant be restrained and enjoined from issuing, selling or disposing of its common stock, to the extent of three Hundred shares thereof, until it shall have complied with the foregoing provisions of such judgment.
3. For their costs of this action.